UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GEOVERA SPECIALTY INSURANCE
COMPANY f/k/a USF&G SPECIALTY
INSURANCE CORPORATION, a foreign
corporation,

     Plaintiff,

v.                        CASE NO. 8:09-CV-1973-T-17EAJ

CHRISTOPHER X. HUTCHINS, individual-
ly, ANTHONY FRACCALVIERI and ZULEMA
RODRIGUEZ, individually, and as the
Co-Personal Representatives
of the Estate of Jessica Leigh
Fraccalvieri, deceased,

     Defendants.
-----------------------------------/

## ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

THIS CAUSE is before this Court on:

| Dkt. 36 | Amended Complaint |
|---|---|
| Dkt. 37 | Defendants' Answer and Counterclaim |
| Dkt. 45 | Plaintiff's Response to Counterclaim |
| Dkt. 32 | Defendants' Motion for Summary Judgment |
| Dkt. 35 | Plaintiff's Amended Motion for Summary Judgment |
| Dkt. 41 | Defendants' Response to Amended Summary Judgment Motion |
| Dkt. 44 | Plaintiff's Response to Summary Judgment Motion |
| Dkt. 48 | Notice of Filing Final Judgment |
| Dkt. 49 | Deposition |
| Dkt. 52 | Notice of Supplemental Authority |
| Dkt. 61 | Motion to Adopt Pleadings |
| Dkt. 62 | Order |

In the Amended Complaint (Dkt. 36), Plaintiff GEOVERA
SPECIALTY INSURANCE COMPANY f/k/a USF&G SPECIALTY INSURANCE

Case No. 8:09-CV-1973-T-17EAJ

CORPORATION ("Plaintiff") seeks a declaratory judgment on three counts.  Count I seeks a declaratory judgment that Plaintiff has no duty to defend or indemnify based on the allegations of the Complaint; Count II seeks a declaratory judgment that Plaintiff has no duty to indemnify based on actual facts; and Count III seeks a declaratory judgment that there is no coverage for punitive damages awarded in an underlying state action ("Underlying Action").[1]  Defendants, ANTHONY FRACCALVIERI and ZULEMA RODRIGUEZ ("Defendants"), assert a counterclaim for a declaratory judgment that Plaintiff has a duty to provide coverage, a duty to defend, and a duty to indemnify.

Defendant Hutchins filed a Chapter 7 Petition in U.S. Bankruptcy Court on August 19, 2011.  The Trustee of Defendant's Bankruptcy Estate, Christine Herendeen,  has adopted the Motion for Summary Judgment (Dkt. 32) and the Response in Opposition to Plaintiff's Amended Motion for Summary Judgment (Dkt. 41).

Plaintiff defended its insured under a reservation of rights in Case No. 51-2007-CA-002301-AWS, filed in Pasco County Circuit Court.  The trial in the Underlying Action was held in April of 2010.  On or about April 15, 2010, a jury returned a verdict in favor of FRACCALVIERI and RODRIGUEZ.  The jury awarded damages as follows: $2,000,000.00 for A.F., Jessica Leigh Fraccalvieri's ("Decedent") minor child, $1,000,000.00 for Theresa Caperna, Decedent's mother, $1,025,000.00 for Anthony Fraccalvieri, Decedent's

---

[1]  The current action before this Court stems from a jury verdict in a state civil action in the Circuit Court of the Sixth Judicial Circuit in and for Pasco County, Florida, Case No. 51-2007-CA-002301-WS, styled, ANTHONY FRACCALVIERI, as Personal Representative of the Estate of JESSICA LEIGH FRACCALVIERI, deceased, Plaintiff v. CHRISTOPHER X. HUTCHINS, et al.

Case No.: 8:09-CV-1973-T-17EAJ

father, and $500,000.00 in punitive damages assessed against
CHRISTOPHER X. HUTCHINS. (Dkt. 32-7).

Both Plaintiff and Defendants have filed a motion for
summary judgment.  Having considered the parties' submissions and
pertinent law, the Court **grants** Plaintiff's Motion for Summary
Judgment and **denies** Defendants' Motion for Summary Judgment.

I.  Preliminary Issue

On 9/27/2010, Plaintiff requested leave to file an Amended
Complaint, and attached a proposed amended complaint (Dkt. 27).
The Court granted the Motion (Dkt. 28).  The Amended Complaint
was filed on 10/5/2010 (Dkt. 36).  Defendants' Motion for Summary
Judgment is directed to the Amended Complaint, although the
Amended Complaint was not filed until after Defendants' Motion
was filed.  Plaintiff filed an Amended Motion for Summary
Judgment (Dkt. 35) which is directed to the Amended Complaint.

II.  Standard of Review

Summary judgment should be rendered if the pleadings, the
discovery and disclosure materials on file, and any affidavits
show that there is no genuine issue as to any material fact and
that the movant is entitled to judgment as a matter of law.
Fed.R.Civ.P. 56(c).

> The plain language of Rule 56(c) mandates the
> entry of summary judgment after adequate time
> for discovery and upon motion, against a
> party who fails to make a showing sufficient
> to establish the existence of an element
> essential to that party's case, and on which
> that party will bear the burden of proof at

Case No.: 8:09-CV-1973-T-17EAJ

trial.

Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

The appropriate substantive law will guide the determination
of which facts are material and which facts are...irrelevant.
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  All
reasonable doubts about the facts and all justifiable inferences
are resolved in favor of the non-movant.  See Fitzpatrick v. City
of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993).  A dispute is
genuine "if the evidence is such that a reasonable jury could
return a verdict for the non-moving party."  See Anderson, 477
U.S. at 248.  But, "[i]f the evidence is merely colorable...or is
not significantly probative...summary judgment may be granted."
Id. at 249-50.

III.  Statement of Facts

1.  Plaintiff insured Lizzie Myrick with homeowner's policy
No. GH20028088 ("the Policy") with an effective date of August
26, 2005, to August 26, 2006. (Dkt. 35-1).  Lizzie Myrick is the
grandmother of Christopher X. Hutchins ("Hutchins"). (Dkt. 32-2
p. 6:11-16).

2.  On February 1, 2006, and continuing into to early
morning hours of February 2, 2006, Hutchins shot Decedent Jessica
Leigh Fraccalvieri ("JLF") in the neck, resulting in Decedent's
death.  (Dkt. 32-1 p. 1; Dkt. 32-2 p. 17:12, p. 18:17-18; p.
25:10-14).

3.  At the time of the shooting, Hutchins was living with
the insured, his grandmother, Ms. Myrick. (Dkt. 32-2 p. 6:11-16).

4

Case No.: 8:09-CV-1973-T-17EAJ

Neither party contests that Hutchins is an insured.

4.   The following provisions of the Policy at issue are
relevant(Dkt. 35-1):

### SECTION II- LIABILITY COVERAGES

### A.   Coverage E- Personal Liability

If a claim is made or a suit is brought against an
"insured" for damages because of "bodily injury" or
"property damage" caused by an "occurrence" to which
this coverage applies, we will:

1.   Pay up to our limit of liability for the damages
for which an "insured" is legally liable.  Damages
include prejudgment interest awarded against an
"insured"; and

2.   Provide a defense at our expense by counsel of our
choice, even if the suit is groundless, false or
fraudulent.  We may investigate and settle any
claim or suit that we decide is appropriate.  Our
duty to settle or defend ends when our limit of
liability for the "occurrence" has been exhausted
by payment of a judgment or settlement.

* * *

### THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY.
### USF&G SPECIALTY INSURANCE COMPANY SPECIAL PROVISIONS
### DEFINITIONS

The definition of "occurrence" is replaced by the
following:

8.   "Occurrence" means an accident, including
continuous or repeated exposure to substantially
the same general harmful conditions, which
results, during the policy period, in:
a.    "Bodily injury"; or
b.    "Property damage".

Assault and battery is not an "occurrence",

5

Case No.: 8:09-CV-1973-T-17EAJ

> whether or not committed by or at the direction of
> an "insured".

* * *

**SECTION II - EXCLUSIONS**

> The following exclusions are added to **E. Coverage E. -
> Personal Liability AND Coverage F - Medical Payments To
> Others:**
>
> **Assault or Battery**
>
> "Bodily injury" or "property damage" arising out of
> assault or battery, whether or not committed by or at
> the direction of an "insured".
>
> **Punitive or Exemplary Damages**
>
> Punitive or exemplary damages, or any costs or interest
> attributable to such damages.

5.   On the night of the shooting, Hutchins and Decedent were
inside 'Calendar Girls' and interacting in a friendly manner.
(Dkt. 32-3 pp. 18-20).

6.   As the group of friends left 'Calendar Girls', including
Decedent and Hutchins, Hutchins retrieved a recently purchased
handgun to 'show off' to Decedent. (Dkt. 32-2 pp. 13, 18-20).

7.   Hutchins was a first-time gun owner. (Id. pp. 13-14).
At the time Hutchins retrieved the gun, Hutchins thought it was
possible that there was a bullet in the clip, but he was unsure
whether there was a bullet in the chamber. (Id. p. 22:14-19).

8.   Hutchins then approached Decedent while Decedent was
sitting in the driver's side seat of a vehicle with the window
halfway down. (Id. p. 20:22-21:5; p. 23:5-10; p. 24:13-16).

6

Case No.: 8:09-CV-1973-T-17EAJ

9. Hutchins proceeded to 'show off' the gun to Decedent by facing the gun towards Decedent so she would acknowledge it. (Id. p. 21:16-19).

10. Decedent's roommate, Jennifer Clarke, was sitting in the passenger front side seat of the vehicle in which Decedent was also seated. (Dkt. 32-3 pp. 22:23-23:4).

11. Clarke recalls Decedent had the vehicle in reverse and was ready to pull out as Hutchins approached Decedent. Clarke further recalls Decedent's window being down and Hutchins placing the gun against Decedent's neck. (Id. p. 24:5-8; p. 24:15-16).

12. The testimony of John Thogmartin, M.D., in the Underlying Action was that Hutchins placed the barrel of the gun against Decedent's neck when the bullet was discharged. Specifically, Dr. Thogmartin testified, "it's with absolute certainty this gun was pressed up against her neck when it was fired." (Dkt. 35-3 p. 20:2-4; p. 24:21-22).

13. At the time Hutchins was displaying his gun to Decedent, Hutchins' finger was on the trigger. Hutchins' gun then discharged a bullet, resulting in Decedent's death. (Dkt. 32-2 p. 25:10-14; pp. 25:22-26:2).

14. Defendants admit there is nothing to impeach any of the witnesses' testimony regarding the shooting. (Dkt. 32 p.7).

7

Case No.: 8:09-CV-1973-T-17EAJ

IV.  Discussion

The basis of jurisdiction is diversity.  Plaintiff issued
and delivered the insurance policy in Florida.  The subject
insurance policy insured Florida residents and property located
in Florida.  The Court therefore applies Florida law to the
substantive issues in this case.

A. Count I - Duty to Defendant and Duty to Indemnify, Based on
   Allegations of Complaint

Plaintiff argues that Hutchins' actions constitute an
assault or battery within the policy exclusion definition, and
therefore, Plaintiff has no duty to defend or indemnify
Defendants.  Defendants argue that Hutchins' actions were not an
assault or  battery within the policy exclusion definition, but
instead an act of negligence resulting in coverage under the
Policy.

1. Controlling Principles

Under Florida law, the issue of an insurer's duty to defend
a lawsuit against its insured is governed by the terms of the
policy and the allegations of the complaint.  See Nat'l Union
Fire Ins. Co. v. Lenox Liquors, Inc., 358 So.2d 533, 536 (Fla.
1977) ("The allegations of the complaint govern the duty of the
insurer to defend."); McCreary v. Fla. Residential Prop. & Cas.
Joint Underwriting Ass'n, 758 So.2d 692, 695 (Fla. 4th DCA 2000)
("'[t]he duty of an insurer to defend is determined *solely* by the

8

Case No.: 8:09-CV-1973-T-17EAJ

allegations of the complaint against the insured' and 'an insurer
has no duty to defend a suit against an insured if the complaint
on its face alleges a state of facts that fails to bring the case
within the coverage of the policy.'") (emphasis in original)
(quoting Marr Invs., Inc. v. Greco, 621 So.2d 447, 449 (Fla. 4th
DCA 1993)); Baron Oil Co. v. Nationwide Mut. Fire Ins. Co., 470
So.2d 810, 813 (Fla. 1st DCA 1985) ("The rule is firmly
established in Florida that a liability insurer's obligation to
defend a claim made against its insured must be determined from
the allegations in the complaint."); C.A. Fielland, Inc. v. Fid.
& Cas. Co., 297 So.2d 122, 127 (Fla. 2d DCA 1974) ("The duty to
defend, in the first instance, is determined from the allegations
of the complaint.").  This rule is often called the "eight
corners rule," a reference to the four corners of the policy and
the four corners of the complaint. See Colony Ins. Co. v. Barnes,
410 F.Supp.2d 1137 (N.D. Fla.2005).  If the complaint alleges any
claim that, if proven, might come within the insurer's indemnity
obligation, the insurer must defend the entire action. Id. at
1139.

The construction of an insurance policy is a question of law
for the court.  Jones v. Utica Mutual Ins. Co., 463 So.2d 1153,
1157 (Fla. 1985); Roberts v. Florida Lawyer's Mutual Ins. Co.,
839 So.2d 843, 845 (Fla. 4th DCA 2003).  When construing
insurance policies, courts are to read the policy as a whole and
attempt to give every provision its full meaning and operative
effect. See Auto-Owners Ins. Co. v. Anderson, 756 So.2d 29, 34
(Fla. 2000).  Any ambiguities in an insurance policy are to be
interpreted liberally and in favor of the insured and strictly
against the insurer. See Flores v. Allstate Ins. Co., 819 So.2d
740, 744 (Fla.2002); Anderson, 756 So.2d at 34; McCreary v. Fla.

9

Case No.: 8:09-CV-1973-T-17EAJ

Residential Prop. & Cas. Joint Underwriting Ass'n, 758 So.2d 692, 694-95 (Fla. 4th DCA 1999). A policy is ambiguous when the language is subject to "more than one reasonable interpretation, one providing coverage and the [sic] another limiting coverage...." Anderson, 756 So.2d at 34. Under Florida law, an insured bears the burden of proving that a claim is covered within an insurance policy. LaFarge Corp. v. Travelers Indem. Co., 118 F.3d 1511, 1516 (11th Cir.1997) (internal citations omitted). The burden of proving an exclusion to coverage is, however, on the insurer. Id.

As the duty to defend is broader than the duty to indemnify, if a court determines there is no duty to defend, as a matter of law there cannot be a duty to indemnify. Wellcare of Florida, Inc. v. American International Speciality Lines Ins. Co., 16 So.3d 904, 906 (Fla. 2d DCA 2009) ("[T]he duty to indemnify is narrower than the duty to defend and thus cannot exist if there is not duty to defend.") (citing Aetna Ins. Co. v. Borrell-Bigby Elec. Co., 541 So.2d 139, 141 (Fla. 2d DCA 1989) and Fun Spree Vacations, Inc. v. Orion Ins. Co., 659 So.2d 419, 421 (Fla. 3d DCA 1995)). "An insurer has no duty to defend a lawsuit where the underlying complaint does not allege facts that would bring the complaint within the coverage of the policy." Auto-Owners Ins. Co. v. Marvin Dev. Corp., 805 So.2d 888, 891 (Fla. 2d DCA 2001).

2. The Policy at Issue

"Occurrence" is defined within the policy as an accident, including continuous or repeated exposure to the same general harmful conditions. The definition of "occurrence" expressly

10